IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JUSTIN GOTTFRIED,                                    Case No. 6:25-cv-01827-AP

          Plaintiff,                              **ORDER**

    v.

ST. VINCENT DEPAUL OF LANE COUNTY,
OREGON DEPT. OF HUMAN SVCS., CARLY
DAVY, DANIEL DELGADO, JENNY MITCHELL,
LEASA STEPHENS, and CITY OF EUGENE POLICE
DEPT.,

          Defendants.
_____

POTTER, United States Magistrate Judge:

    Self-represented Plaintiff Justin Gottfried originally brought an action against

Defendants St. Vincent DePaul of Lane County (SVDP), Oregon Dept. of Human Services

(ODHS), Carly Davy, Daniel Delgado, Jenny Mitchell, Leasa Stephens, and the City of Eugene

Police Department. ECF No. 1. He subsequently filed an amended complaint; he added

additional claims against those defendants and added additional defendants, including Bill

Palmer, a state child welfare worker. ECF No. 15.

    Plaintiff's application to proceed in forma pauperis was granted on November 17, 2025.

ECF No. 16. The Court also dismissed Plaintiff's complaint and his amended complaint for

failure to state a claim, but granted Plaintiff leave to amend. *Id.*

Plaintiff filed an "amended supplemental complaint" along with supporting exhibits on November 19, 2025. ECF No. 19. After that, he continued filing a variety of motions and other documents including a motion for reconsideration,[1] two emergency motions for declaratory judgment, a supplemental tort complaint, a supplemental complaint for declaratory and injunctive relief, and a third supplemental complaint for damages. ECF Nos. 18, 22, 23, 25, 27, 28.

Because Plaintiff's amended and supplemental complaints and his motions for declaratory or injunctive relief fail to state a claim, the Court dismisses his claims.

## BACKGROUND

Plaintiff Gottfried[2] has filed at least five different cases in this District alleging various constitutional violations by various defendants. This case, along with two other cases filed, raises allegations related to the State's decision to take custody of Plaintiff's children.[3] *See Gottfried v. St. Vincent DePaul of Lane Cty., et al.,* 6:25-cv-01827-AP; *Gottfried-Perkins v. Palmer, et. al.,* 6:25-cv-01450-AA (sealed); *Gottfied-Perkins v. Palmer, et. al.,* 6:25-cv-01451-AA (sealed). He has also filed cases in state court seeking the return of his children. *See Gottfried-Perkins v. Doe,*

---

[1] On November 20, 2025, Plaintiff sent an email to the Court requesting that the Court review the exhibits that accompanied his original complaint and allow the case to proceed on the merits. The Court construed the email as a request for reconsideration and docketed it as such. ECF No. 18. The Court did review the exhibits at the time of the original filing, and it did not change the Court's view of the merits of Plaintiff's claims.

[2] Plaintiff has filed cases as Justin Gottfried, Justin Perkins-Gottfried, Justin Perkins as well as in the names of his minor children. Because he filed this case as Justin Gottfried, that is the name the Court is using.

[3] The other two cases are unrelated to the custody issues. In the first, Plaintiff alleges that a company discriminated against him when it refused to rent a one bedroom to him and his daughter to share. *See Perkins v. Cardinal Group Management Midwest,* 6:25-cv-01454-MC (D. Or.). In the second, Plaintiff alleges he was not paid his final wages after he left his job. *See Gottfried v. Kalkat, et. al.,* 6:25-cv-02147-MC (D. Or.).

PAGE 2 – ORDER

*et al.* 25-cv-09709 (Or. Cir. Ct. Lane Cty.); *Gottfried v. Palmer,* 25-SC-28316 (Or. Cir. Ct. Lane Cty.); *Gottfried v. Dept. of Human Serv.,* 24-cv-50856 (Or. Cir. Ct. Lane Cty.). Based on the records in this case, it appears Plaintiff's children are currently wards of the court in Oregon.[4]

The relevant pleadings in this matter are described below.

**A. The Complaint and Amended Complaints**

The present case began as a lawsuit against various Defendants; Plaintiff alleged that Defendants distributed a "Be On The Lookout" flier, describing Plaintiff as "a dangerous individual who was criminally trespassed from the entire State of Oregon, St. Vincent DePaul of Lane County, and ODHS properties for alleged violent physical behavior and encouraging law enforcement to arrest the plaintiffs for criminal trespass and violent assault." Compl. ¶ 16, ECF No. 1. Plaintiff alleged the flier was "entirely false," and was "widely distributed," causing "significant distress, harassment by law enforcement, and damage to plaintiff's reputation." *Id.* at ¶ 17. Plaintiff claimed the "actions of the defendants were part of a coordinated effort to intimidate and ostracize the plaintiff, depriving him of his constitutional rights, including his right to due process and equal protection under the law." *Id.* at ¶ 18.

Plaintiff brought claims against all Defendants under 42 U.S.C. § 1983 (Section 1983) for violations of his First and Fourteenth Amendment rights, as well as State claims for harassment, defamation, and providing false information to law enforcement under ORS 166.065, 31.205, and 162.375. Compl. ¶¶ 20-34. Plaintiff sought compensatory and punitive damages, injunctive relief, as well as attorney's fees and costs. *Id.* at 8-9.

---

[4] Plaintiff has filed various documents related to the dependency action, including a copy of the October 29, 2025, Oregon Court of Appeals decision affirming the finding of the Jackson County Circuit Court that Oregon has jurisdiction over his children. ECF Nos. 15-14.

Plaintiff then filed an amended complaint. In that complaint, he alleged that the State of Oregon, through ODHS and CPS, took his children unlawfully as part of a plan to place children in foster care for financial gain. He described it as part of a pattern of racketeering activity. ECF No. 15. He also alleged Defendant's actions amounted to retaliation for reporting alleged illegal activities and unlawful conduct and for petitioning the government for "redress of grievances." *Id*. at ¶¶ 9-10.

The amended complaint asserted Federal RICO claims under 18 U.S.C. § 1962(c)-(d); civil rights claims under 42 U.S.C. § 1983 alleging First, Fourth, and Fourteenth Amendment rights violations; and under 28 U.S.C. § 1738A, claiming illegal exercise of jurisdiction over California residents. Plaintiff indicated that he did not seek modification of his custody or visitation rights; he simply wanted damages and "cessation of trafficking activity." ECF No. 15 ¶ 4.

This Court dismissed both the complaint and the amended complaint for failure to state a claim, but granted Plaintiff leave to file an amended complaint. ECF No. 16. Plaintiff filed his amended complaint, which he captioned as "Amended Supplemental Complaint" on November 19, 2025. ECF No. 19. It listed on the caption sheet "St. Vincent depaul [sic], Bill Palmer, et al." as the defendants, but on the third page it identified the sole defendant as Bill Palmer, who is identified as a child-welfare working employed by the Oregon Department of Human Services. *Id.* at 1, 3. Plaintiff brings claims against Mr. Palmer under 42 U.S.C. § 1983 for "unlawful removal, continued detention, coercion, obstruction, and deprivation of constitutional, statutory, and privacy rights of Plaintiff and his children" as well as for violations of "Plaintiff's rights to family integrity, due process, equal protection, free exercise of religion, free speech, and privacy" based on the ongoing removal of his children from his care. *Id.* at 2.

On December 4, 2025, Plaintiff filed a Supplemental Tort Complaint against the City of Eugene Police Department, the Oregon Department of Human Services, Bill Palmer, and others. ECF No. 25. The Supplemental Tort Complaint was identical to the original complaint in this case related to the "Be On the Look Out" flier and his trespass from State property that was filed in this case, save for the names of his children being blacked out and replaced with initials in a couple of places and a couple of other minor handwritten changes.[5]

On December 9, 2025, he filed a supplemental complaint for declaratory and injunctive relief in which he claims the trespass action violated the Americans with Disabilities Act. ECF No. 27. He also filed a third supplemental complaint on behalf of himself, his children, and the mother of his children alleging civil rights violations by several state actors and PeaceHealth Medical Center based on the removal of one of the minor children after the mother had a miscarriage in 2016. ECF No. 28.

### B. Motions for Declaratory Relief

Plaintiff has also filed two motions for declaratory relief. In the first "emergency petition for declaratory judgment," Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202 "to determine whether the dependency proceedings involving his family were conducted in violation of the Constitution of the United States." ECF No. 22. In the second "emergency petition for declaratory and injunctive relief," Plaintiff seeks "declaratory and injunctive relief to restore lawful parental custody and protect the children from ongoing harm." ECF No. 23.

---

[5] It is also identical to the original complaint filed in *Gottfried-Perkins v. Palmer, et. al.*, 6:25-cv-01451-AA. In fact, it appears that Plaintiff took the file-stamped copy of that complaint and simply marked through the original file date, case number, and his children's names.

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2), which governs IFP complaints, this Court must review Plaintiff's amended complaint and dismiss any claim that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

Complaints filed by self-represented parties are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff still must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unless it is "absolutely clear" that the complaint's defects cannot be cured by amendment, a self-represented litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**DISCUSSION**

**I.    Abstention and the Domestic Relations Exception**

Many of Plaintiff's claims in his various filings attack the State of Oregon's decision to remove his children from his care and limit his access to his children. To the extent his claims would require this Court to weigh in on the status of the custody of his children, his claims must be dismissed.

Federal courts lack jurisdiction over both ongoing and final state court decisions. Under the *Younger* doctrine, federal courts must abstain from interfering in ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* abstention applies when: (1) the state

proceedings are ongoing; (2) the claims implicate important state interests; and (3) the state proceedings provide an adequate forum to raise federal questions." *Nixon v. Div. of Child Support*, No. 3:25-CV-01969-AN, 2025 WL 3466355, at *3 (D. Or. Dec. 2, 2025) (citation omitted). Additionally, under the *Rooker-Feldman* doctrine, federal courts other than the Supreme Court lack jurisdiction to review final state court decisions. *Partington v. Gedan*, 961 F.2d 852, 864 (9th Cir. 1992) ("Under the '*Rooker–Feldman* doctrine,' review of state court decisions may only be conducted in the United States Supreme Court. Lower federal courts may not review such decisions.") This includes decisions to make children wards of the court and place them in foster care.

When a Plaintiff wishes to interfere with a state case that involves child custody proceedings, even absent *Younger,* federal courts should not interfere; this is often referred to as the "domestic relations exception." *See Chima v. Perkins*, No. 25-CV-06385-CRB, 2025 WL 3182071, at *3 (N.D. Cal. Nov. 5, 2025). Under the domestic relations doctrine, federal courts lack jurisdiction over claims related to child custody issues. *Ankenbrandt v. Richards*, 504 U.S. 689, 702-704 (1992) (holding that the domestic relations exception to federal subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). The fact that Plaintiff styles his claims as violations of his constitutional rights does not change the analysis. *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) ("This case, while raising constitutional issues, is at its core a child custody dispute.") "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." *Thompson v. Thompson,* 798 F.2d 1547, 1558 (9th Cir. 1986).

It is unclear to the Court, despite Plaintiff's many filings, the precise status of the current child dependency action. Plaintiff filed as an exhibit to his first amended complaint an October

25, 2025, decision of the Oregon Court of Appeals affirming the trial court's determination that Oregon had jurisdiction to make Plaintiff's children wards of the court. ECF No. 15, Ex. 14. (Oregon Court of Appeals Nos. A187239, A187238). But the status of any appeal of that decision or the underlying juvenile dependency proceeding remains unknown. It is clear based on the filings in this case, though, that an Oregon state court has determined that Plaintiff should not currently have custody of his children and that his rights to visit his children are limited. And this Court has no role in interfering in an ongoing state dependency action or reviewing any final decision of a state court regarding parental rights. *See Soto v. Child Protective Servs.*, No. 21-cv-04570-EMC-JSC, 2021 WL 361032 4, at *3 (N.D. Cal. June 23, 2021), *report and recommendation adopted*, 2021 WL 3610323 (N.D. Cal. July 22, 2021) (discussing the *Rooker-Feldman* which prevents federal courts from reviewing a state court judgment); *Cartano v. Santa Clara Cnty.,* No. C-02-1191 PJH, 2002 WL 1677723, at *6, n.2 (N.D. Cal. July 19, 2002) (discussing *Younger* abstention which requires federal courts to abstain from taking jurisdiction when state proceedings are ongoing).

In his third supplemental amended complaint, Plaintiff cites to several cases which he contends prove that wrongful removal of a child violates the Constitution and gives him standing to sue. ECF No. 28. The Court does not disagree that parents have been able to sue based on wrongful removal of a child. But the cases cited by the Plaintiff do not assist his case, as those cases did not involve requests for rulings which would call into question or undermine the ultimate custody determination of the state court. *See, e.g., Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) (permitting parents and children to sue the City for constitutional violations; children had been reunited with parents after information was found to be false); *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (allowing case against social worker for violation

of Fourth Amendment to proceed; children were reunited with parents and case was complete).

Here, Plaintiff seeks to have this Court rule that the removal of his children and their "continued

detention," as well as the other limitations placed on him with respect to making parenting

decisions, violate the Constitution. His claims are "inextricably intertwined" with the current

state court orders regarding custody of Plaintiff's minor children and must be dismissed. *Nixon*,

2025 WL 3466355, at *3.

The domestic relations doctrine and the principles of abstention also preclude this Court

from issuing the declaratory and injunctive relief Plaintiff seeks. Plaintiff seeks "wholesale

federal intervention" in the state dependency action, including declaratory and injunctive relief;

"[t]his is not the proper business of the federal judiciary." *H.C. ex rel. Gordon v. Koppel*, 203

F.3d 610, 613–14 (9th Cir. 2000) (finding *Younger* abstention required dismissal of suit alleging

due process violations in state custody proceeding).

## II.    Claims on Behalf of Others

Despite being told both in this case and in his other cases that he cannot bring claims on

behalf of others without a lawyer, Plaintiff continues to attempt to bring claims on behalf of his

minor children, their mother, and other persons. *See, e.g.*, ECF Nos. 19, 22, 25, 27, 28. That is

not permitted. Although "a non-attorney may appear pro se on his own behalf," it is well settled

that he "'has no authority to appear as an attorney'" on behalf of others. *Johns v. Cnty. of San

Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (quoting *C.E. Pope Equity Tr. v. United States*, 818

F.2d 696, 697 (9th Cir. 1987)). And a parent may not "bring an action on behalf of a minor child

without retaining a lawyer." *Id*. As such, the Court must dismiss the complaints to the extent they

include either the minor children or other third parties. The Court also notes that to the extent

that Plaintiff's children remain wards of the court, the State Court, not Plaintiff, has authority

over the children. *See Matter of A.R.M.,* 313 Or. App. 503; 497 P.3d 781 (2021).

### III.    Time-Barred Claims

In his third supplemental complaint, Plaintiff appears to be bringing an action based on

the removal of at least one of his children in 2016 for approximately one year. ECF No. 28. This

allegedly occurred after the mother of the child suffered a miscarriage due to drug use. *Id.* at 4.

In addition to the removal of the child, he alleges false statements made by medical staff, law

enforcement, and child welfare personnel about the stillbirth caused him ongoing harm. He

brings the claims under 42 U.S.C. § 1983. The statute of limitations for those claims is two years.

*See Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1219 (D. Or. 2024) (holding that the

relevant statute of limitations for § 1983 claims is Oregon's two-year  statute of limitations for

personal injury actions). Plaintiff's third amended complaint focuses on events that took place in

2016 or shortly thereafter; those claims are time-barred.

Plaintiff also refiled his complaint that included a claim for defamation which the Court

previously made clear was barred under the statute of limitations. ECF Nos. 1, 25. Under Oregon

law, there is a one-year statute of limitations on defamation actions. *See* ORS 12.120(2). Here,

the fliers which form the basis of his defamation claim were distributed "on or about May 15th

of 2024 and continuing through August of 2024." Compl. ¶ 16. Plaintiff's original complaint was

filed on October 6, 2025 and his supplemental on December 4, 2025. Thus, the alleged

defamatory statements are outside the statute of limitations.

### IV.    Additional Constitutional and Statutory Claims

In addition to his claims related to the state child custody matters, Plaintiff re-filed his

original (dismissed) complaint related to the "Be On The Look Out" poster as well as a

supplemental complaint alleging the trespass action violated the Americans with Disabilities Act (ADA) and other similar federal statutes. ECF Nos. 25, 27. Those claims must also be dismissed.

### A.  Section 1983 Claims

Plaintiff not only realleges the previous § 1983 claims that this Court dismissed but also raises new § 1983 claims or references additional § 1983 in his other supplemental complaints. *See* ECF Nos. 25, 27, 28. The Court previously explained the defects in his original § 1983 claims. ECF No. 16. Nevertheless, the Court will now address all of the allegations, both old and new, made in the current complaints.

To bring a claim under § 1983, a plaintiff must allege both the "deprivation of a right secured by the federal Constitution or statutory law," and that the "deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Allegations of constitutional violations must sufficiently identify the causal connection between each defendant's actions and the claimed deprivation of rights. *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler,* 499 U.S, 432 (1991).

As before, Plaintiff's general allegations of constitutional violations in his supplemental tort complaint cannot survive. ECF No. 25. That complaint was originally dismissed because he failed to identify the specific actions taken by Defendants; instead, it leveled blanket allegations of wrongdoing against all Defendants.  ECF No. 16 at 5. Nothing has changed in the new supplemental complaint. ECF No. 25. It is once again dismissed.

In his initial amended complaint, though, he brings claims solely against Bill Palmer. ECF No. 19. As discussed above, to the extent Plaintiff seeks a ruling that would call into question the state court's dependency action, this Court lacks jurisdiction over his claims.

Furthermore, to the extent Plaintiff is trying to bring claims against Mr. Palmer for initiating and pursuing a dependency action in court, he is entitled to absolute immunity. *See Coverdell v. Dep't of Soc. & Health Servs., State of Wash.,* 834 F.2d 758, 764 (9th Cir. 1987) (finding social worker was entitled to quasi-prosecutorial immunity based on initiation of dependency proceedings). Mr. Palmer would also be entitled to absolute immunity to the extent his actions—including removal of the children, limits on Plaintiff's access to his children, and continued placement of the children—were based on court orders. *Id.* at 764-65 (finding social workers were entitled to absolute immunity for complying with court order to remove child). To the extent his substantive due process claims, procedural due process claims, First Amendment claims, and equal protection claims are really attacks on the fact that his children are currently wards of the court and he does not have access to them and believes the court process is unfair, those claims fall squarely in these categories and must be dismissed.

Plaintiff also alleges that the children were removed without a warrant or court order. It is true that warrantless removal of a child from a parent may support a § 1983 action. *See Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1106-07 (9th Cir. 2001) ("Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'") (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)). But all of Plaintiff's claims focus on the removal and "continued detention" of the children who are subject to an ongoing state proceeding. And the remedy he seeks is return of his children. That is not a remedy this Court can provide.

PAGE 12 – ORDER

His retaliation claim also fails to the extent he is alleging the ongoing state dependency action is the retaliatory act. Again, that is an attack on the state dependency action. To the extent Plaintiff is trying to allege a different form of retaliation, he fails to allege any specific acts of protected activity or retaliation.

Finally, the Eleventh Amendment limits § 1983 claims to "persons." *Flint v. Dennison,* 488 F.3d 816, 824-825 (9th Cir. 2007). State agencies such as ODHS, including ODHS employees acting in their official capacity, "are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity." *Id.* To the extent his various complaints include state agencies or state actors in their official capacity, they must be dismissed.

### B. State Claims

Plaintiff once again attempts to brings state claims under ORS 166.065 and ORS 162.375. Supplemental Tort Compl. ¶¶ 23-34. ORS 166.065[6] criminalizes certain acts of harassment, while ORS 162.375[7] criminalizes the act of initiating a false report to a law enforcement agency. Although both statutes provide for criminal liability and penalties, neither statute creates a private right of action for civil plaintiffs to pursue. *See Doyle v. City of Medford*, 356 Or. 336, 348, 337 P.3d 797, 805 (2014) (en banc); s*ee also Smith v. Portland*, No. 3:22-cv-00946-HZ, 2023 WL 2734804, at *2 (D. Or. Mar. 30, 2023) (the only liability for violation of ORS 166.065 is criminal). Moreover, Oregon law provides for ample "private actions under which [Plaintiff] may seek recovery." *Smith*, 2023 WL 2734804, at *2.; *see also* ORS Chapter

---

[6] Under ORS 166.065 the crime of harassment is a class B misdemeanor.

[7] Under ORS 162.375 the crime of initiating a false report to a law enforcement agency is a class A misdemeanor.

31, Tort Actions. Thus, because the relevant Oregon criminal statutes do not include a private right of action, Plaintiff's claims for harassment and providing false information to law enforcement must also be dismissed.

## C. **ADA and Rehabilitation Act Claims**[8]

In his second supplemental complaint, Plaintiff also alleges that when various unidentified Defendants trespassed him from state property, they violated the ADA and Section 504 (the Rehabilitation Act). ECF No. 27. And he is filing his complaint to "challenge a systemic, discriminatory, and punitive practice by Defendants" when they "impose trespass orders, exclusions, shelter-access bans, and refusal of federally mandated services against individuals with disabilities, including the Plaintiff." ECF No. 27 at 2.

Both Title II of the ADA and the Rehabilitation act prohibit discrimination on the basis of disability. 42 U.S.C. § 12132; 29 U.S.C. § 794. And because they protect against the same harm, the two laws are analyzed the same. *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021).

To prevail under Title II of the ADA, a "plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). A Rehabilitation Act claim also requires that the public entity in question receive federal funds. *Payan*, 11 F.4th at 738.

---

[8] Plaintiff also attempts to bring a claim under the IDEA act for educational services potentially lost by his children. He cannot bring an action on behalf of his children.

There are three theories of liability for a disability claim: "disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Id.* (citing *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016)).  A disparate treatment claim requires a plaintiff to show that he was treated differently because of his disability. *Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 812 (N.D. Cal. 2024). A disparate impact claim requires a plaintiff to show that a facially neutral policy effectively denies meaningful access to public services. *Payan*, 11 F.4th at 738.  And a plaintiff can show a failure to make a reasonable accommodation if he can show an individualized accommodation was denied. *Id.*

Here it is somewhat difficult to discern Plaintiff's theory, but it appears to be that the application of the trespass law disproportionally impacts people, like Plaintiff, who are disabled and that the State should have done more to accommodate him. His claims fail for a multitude of reasons. The first is that he fails to identify what his disability is, much less how the trespass policy disproportionately impacted him because of that disability. Certainly, being trespassed from state property would make accessing benefits more difficult, but that would apply to anyone regardless of their disability status. Plaintiff also fails to identify any specific facts that show he was trespassed as a result of his disability. The flyer reflects he was trespassed because he allegedly engaged in violent interactions. Plaintiff contends that the flyer is false and defamatory, but that is not sufficient to show Defendants acted because of his disability. He also fails to establish what actions any of the six named defendants (or the 20 Doe defendant) took to discriminate against him, which makes it impossible for them know what allegations specifically apply to them. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995) (a plaintiff must plead sufficiently specific facts so as to put a defendant on notice of what they allegedly did

to violate the plaintiff's constitutional rights). Finally, he fails to identify any reasonable accommodation that was denied. His ADA and Rehabilitation Act claims are dismissed.

### D.  HIPAA Claims

Plaintiff also claims Mr. Palmer violated HIPAA by refusing to provide Plaintiff with his children's medical and counseling records. Under HIPAA, "if under applicable law a parent, guardian, or other person acting in loco parentis has authority to act on behalf of an individual who is an unemancipated minor in making decisions related to health care, a covered entity must treat such person as a personal representative under this subchapter, with respect to protected health information relevant to such personal representation." 45 C.F.R. § 164.502(g)(3)(i). Plaintiff's children appear to be wards of the Court. As such, Plaintiff does not have the legal authority to make medical decisions for his children and this provision does not apply.

### V.      Request for Appointment of Counsel

Plaintiff has filed a request for appointment of counsel. ECF No. 30. There is no constitutional right to appointed counsel in a civil case. *Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir. 1980). While the court "may request an attorney to represent any person unable to afford counsel" under 28 U.S.C. § 1915(e)(1), the statute "does not authorize appointment of counsel to involuntary service." *United States v. 30.64 Acres of Land,* 795 F.2d 796, 801 (9th Cir. 1986); *Mallard v. U.S. Dist Ct. for S. Dist. of Iowa,* 490 U.S. 296, 302 (1989). The decision to appoint counsel is within the discretion of the district court and is only granted in "exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). Courts consider "the likelihood of the plaintiff's success on the merits" and "the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon,* 7879 F.2d 1328, 1331 (9th Cir. 1986)). As explained in this Order,

Plaintiff has failed to state a viable claim for relief. Exceptional circumstances do not support the appointment of counsel at this time. Plaintiff's motion is denied.

**VI.     Leave to File a Further Amended Complaint**

Plaintiff has received guidance from multiple courts about the deficiencies with his various claims, but he persists in filing claims that have already been dismissed. Nevertheless, Plaintiff will be given one final opportunity to amend his complaint. Plaintiff may file **one** amended complaint. Any amended complaint filed by Plaintiff must clearly identify (1) the parties; (2) the claims; and (3) sufficient facts to support each claim. Plaintiff should not file voluminous and unnecessary exhibits; he must allege the facts in his Complaint. After that amended complaint is filed, Plaintiff may not file any additional documents until the Court has reviewed the amended complaint to determine if it states a plausible claim.

## CONCLUSION

Plaintiff's claims in his amended and supplemental complaints are DISMISSED and his motions for declaratory and injunctive relief are DENIED. Within thirty (30) days from the date of this Order, Plaintiff may submit a single Amended Complaint curing the deficiencies noted above. Plaintiff is advised that the failure to do so will result in the dismissal of this proceeding, with prejudice.

DATED this 2nd Day of January 2026.

____s/Amy E. Potter_____
AMY E. POTTER
United States Magistrate Judge

PAGE 17 – ORDER